**Order Filed on July 30, 2019
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(a)**

**CULLEN AND DYKMAN LLP**
433 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-1300 (Tel)
(201) 488-6541 (Fax)
David Edelberg, Esq.
dedelberg@cullenanddykman.com
Counsel to Dianna Guadagnino

| | |
|---|---|
| In Re:<br><br>　　Dianna Guadagnino,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No.: 17-12951(CMG)<br>Hearing: June 18, 2019<br>Time: 2:00 p.m. |

## ORDER CONFIRMING DEBTOR'S PLAN

The relief set forth on the following pages, numbered two (2) through seventeen (17), is

hereby **ORDERED.**

**DATED: July 30, 2019**

Honorable Christine M. Gravelle
United States Bankruptcy Judge

**P a g e | 2**

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

Upon the Plan of Reorganization dated July 31, 2018 (the "Plan"), filed by Dianna Guadagnino (the "Debtor"), in her chapter 11 case; and the Order Conditionally Approving Disclosure Statement With Respect to First Amended Plan of Reorganization Proposed By Debtor; Approving Solicitation Procedures, and Manner Of Notice Fixing the Deadline For Filing Objections To Confirmation Of The Plan: (i) fixing September 18, 2018 as the initial hearing (the "Hearing") on confirmation of the Plan; (ii) establishing September 11, 2018 as the initial last day to vote to accept or reject the Plan and/or to object to the Plan (the "Scheduling Order"); it appearing that the confirmation hearing date and related deadlines have been adjourned on several occasions; upon all of the proceedings herein; and after due deliberation and sufficient cause appearing therefore, and this Court having FOUND that:

A.       This Bankruptcy Court has jurisdiction over this Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.       This Bankruptcy Court takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of this Chapter 11 Case.

2

P a g e | 3

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

C.      The Debtor has the burden of proving the elements of sections 1129(a) of the Bankruptcy Code by a preponderance of evidence.

D.      The Disclosure Statement, the Plan, the Ballots, which were transmitted and served as set forth in the Certification of Service filed August 2, 2018, were transmitted and served in compliance with all applicable requirements of due process, the Bankruptcy Code, the Scheduling Order, Rule 2002 of the Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and any other requirements of the Local Rules or of this Court, and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

E.      Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practice.

F.      The Debtor received objections to confirmation of the Plan by the following parties and have resolved all of them as follows;  (i) the United States of America, Internal Revenue Service has withdrawn its objection; (ii) Navient's objection has been resolved by agreement between the parties;  (iii)  Bank of America's objection has been resolved by agreement between the parties;  (iv) U.S. Bank National's objection has been resolved by agreement between the parties;  (v) Wells Fargo Bank's objection has been resolved by agreement between the parties;  (vi) M&T Bank has been paid in full;  (vii)  Specialized Loan Servicing LLC ("SLS"), servicer for US National Bank has agreed upon its treatment pursuant to the Plan., and (vii) Liberty Park Commons, LLC has withdrawn its objection to the Plan, and did not appear at the confirmation hearing to prosecute same.

**P a g e |4**

Debtor: In re Dianna Guadagnino
Case No.: 17-12951 (CMG)
Caption of Order: **ORDER CONFIRMING DEBTOR'S PLAN**

G. <u>Capitalized Terms</u>. All capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

H. <u>Bankruptcy Code Section 1129(a)</u>.

(1) <u>Plan Compliance with Bankruptcy Code Section 1129(a)(1)</u>. The Plan complies with the applicable provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code").

(2) <u>Proponent Compliance - Section 1129(a)(2)</u>. The Debtor, as the sole proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(3) <u>Good Faith - Section 1129(a)(3)</u>. The Plan has been proposed in good faith and not by any means forbidden by law. The Plan has been proposed for valid business purposes and to satisfy substantial obligations of the Debtor to its creditors. The Debtor's good faith is evident from the facts and records of this Chapter 11 Case, the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the purpose of maximizing the value of the Debtor's estate.

(4) <u>Payment -Section 1129(a)(4)</u>. All payments made or proposed to be made by the Debtor for services, including, without limitation, any payments made or to be made for professional services, or for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the case, have been fully disclosed to this Court and approved as reasonable and proper by this Court or will be subject to approval of this Court.

(5) <u>Directors, Officers, Insiders - Section 1129(a)(5)</u>. Section 2.8 of the Plan "Post Confirmation Management" contains provisions with respect to the Debtor's continued

**P a g e | 5**

Debtor:            In re Dianna Guadagnino
Case No.:          17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

management and operation of the Properties is consistent with the interests of the creditors, equity security holders and public policy in accordance with Section 1123(a)(7).  The Debtor shall continue to manage the Properties on the Effective Date and the Reorganized Debtor shall remain in control of her respective assets and business operations post confirmation.

(6)      No Rate Change Jurisdiction - Section 1129(a)(6). The Plan does not contain any change in rates that are subject to the jurisdiction of any governmental regulatory commission. No regulatory approval is required to implement the Plan.

(7)      Best Interests of Creditors - Section 1129(a)(7). The evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that with respect to each impaired class of claims, each holder of a claim in such class has accepted the Plan or will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code on such date.

(8)      Acceptance of the Plan - Section 1129(a)(8). Except for Class 1, M&T Bank, all Classes are impaired under the Plan and are entitled to vote on the Plan.  Classes 6 (Unsecured Creditors) and 5 (Diane Clemente) have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.  Classes 2, 3, 4 and 6 initially have abstained from voting on the Plan.  However, pursuant to settlements reached with such Creditors they have agreed to support confirmation of the Plan.  Class 1 (M&T Bank) has voted against the plan, and subsequently, has been paid in full.  Thus, the Plan is confirmable pursuant to section 1129(a) of the Bankruptcy Code.

**P a g e | 6**

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

(9)      Priority Claims - Section 1129(a)(9). The Plan provides that all holders of claims entitled to treatment under Section 507(a) of the Bankruptcy Code will receive cash payments equal to the allowed amount of such claims on or as soon as practicable after the Effective Date or the when such claim is allowed by a final order of the court or as otherwise agreed to by the parties.   The Debtor has resolved the amount of all Priority Claims, and fully paid same in connection with refinancing M&T Bank's mortgage.

(10)      Acceptance by Impaired Class - Section 1129(a)(10). Except for Class 1, M&T Bank, all Classes are impaired under the Plan. These Classes have voted to accept the Plan. The Plan therefore satisfies the requirement of Section 1129(a)(10) of the Bankruptcy Code that at least one class of Claims impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

(11)      Feasibility - Section 1129(a)(11). Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor.

(12)      No Retiree Benefits - Section 1129(a)(13). The Debtor has no retirement benefits, as defined in Section 1114 of the Bankruptcy Code, and therefore Section 1129(a)(13) is applicable.

I.      No Other Plan - Section 1129(c). The Plan is the only plan of reorganization confirmed by this Court in the Bankruptcy Case. No other plan of reorganization has been filed and prosecuted other than by the Debtor.

J.      No Avoidance of Taxes - Section 1129(d). The primary purpose of the Plan is not the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933. There has been no request by a governmental unit that is a party in interest in this case to

6

**P a g e | 7**

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

make a finding that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the applicable securities laws.

K.  <u>Modification of the Plan</u>. The Court finds that any additional modifications to the Plan filed or announced prior to the conclusion of the Confirmation Hearing do not materially and adversely change the treatment of the Claim of any creditor or the Interest of any equity security holder who has not accepted in writing such modifications; accordingly, the Plan, as it was modified by such modifications, is deemed accepted by all creditors who have previously accepted the Plan. Accordingly, pursuant to Bankruptcy Rule 3019, those modifications do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of votes under Bankruptcy Code section 1126, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

L.  <u>Classification and Contents</u> - Sections 1122 and 1123.  The Plan satisfies the requirements of Section 1122 and 1123 of the Bankruptcy Code.

M.  <u>Assumption and Rejection Requirements Satisfied</u>. In accordance with the provisions of Sections 365 and 1123(b)(2) of the Bankruptcy Code, Section 2.5 of the Plan provides that all executory contracts and unexpired leases of the Debtor which are not expressly rejected prior to the Confirmation Date or are the subject of a motion to reject that is pending as of the Confirmation Date, are assumed pursuant to the terms of this Order.

N.  <u>Solicitation</u>. The solicitation of acceptances of the Plan was in good faith and in compliance with applicable provisions of the Bankruptcy Code.

P a g e | 8

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

O.    Ballot Tabulation. The procedures by which the ballots for acceptance or rejection of the Plan were distributed and tabulated were fair and were properly conducted in accordance with the Scheduling Order.

P.    Effective Date of the Plan. The Effective Date means the date that this order becomes a Final Order.

Q.    Release and Exculpation. The release, exculpations, limitation of liability, and injunction provisions contained in the Plan are fair and equitable, were properly noticed to Holders of Claims and Interests and other interested parties in accordance with the requirements of due process and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and are in the best interests of the Debtor and its Estate, and such provisions shall be effective and binding upon all persons and entities to the full extent provided in the Plan.

NOW, THEREFORE, based upon the Court's review of the certifications of Dianna Guadagnino; and upon all of the evidence proffered or adduced, memoranda and objections, if any, filed in connection with, and arguments of counsel made at the hearing to consider confirmation of the Plan (the "Confirmation Hearing"); and upon the entire record of the Confirmation Hearing and the Bankruptcy Case; and after due deliberation thereon; and good cause appearing therefore it is hereby ORDERED, ADJUDGED, AND DECREED THAT;

1.    Confirmation of Plan. The Plan attached as Exhibit A, and except as modified hereby, is confirmed in all respects, and all parties in interest are authorized and empowered, or enjoined, as the case may be, to act in accordance with its terms.

**P a g e | 9**
Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

2.      Disposition of Objections. Any objection to the confirmation of the Plan, which has not been withdrawn, waived, or settled, and all reservation of rights included therein, is overruled.

3.      Binding Effect of Plan. The Plan and the terms of this Order shall be binding upon each creditor of the Debtor and any other party in interest in the Bankruptcy Case, whether or not the claim or interest of such creditor or other party in interest is impaired under the Plan and whether or not such creditor or other party in interest has filed, or is deemed to have filed, a proof of claim or interest or has accepted, or is deemed to have accepted, or rejected the Plan unless otherwise set forth herein.  The Plan, will also act as an injunction against any Person commencing or continuing any act, employment or process, or act to collect, offset or recover any Claim or Cause of Action against the Debtor, all such claims being satisfied, released or discharged under this Plan.

4.      Payment of United States Trustee's Fees. On the Effective Date of the Plan, or as soon thereafter as is practicable, all fees due to the United States Trustee pursuant to 28 U.S.C. § 1930 shall be paid. Such fees will be paid as they become due and payable by the Reorganized Debtor as the case may be until the Bankruptcy Case is closed for purposes of Section 350 of the Bankruptcy Code and Rule 3002 of the Bankruptcy Rules.

5.      Payment of Professionals. All professionals retained pursuant to Sections 327, 328 or 330 of the Bankruptcy Code shall submit a final fee application within ninety (90) days of the Effective Date for approval by the Court in accordance with the terms of the Scheduling Order.

9

**P a g e | 10**

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

6.      <u>Bar Date for Assumption and Rejection Claims</u>. Any non-Debtor party to an executory contract or unexpired lease rejected pursuant to the Plan must file a claim based upon such rejection within thirty (30) days of the Effective Date or within such further time as may be fixed by the Court.

7.      <u>Reorganized Debtor Officers and Directors</u>. Upon the Effective Date, Dianna Guadagnino shall continue to operate and manage the Debtor's assets and properties.

8.      <u>Permanent Injunction</u>. From and after the Confirmation Date, there shall be in place with regards to the Debtor, the Debtor's Assets and any Claims, a permanent injunction to the same extent and with the same effect as the stay imposed by Section 362 of the Bankruptcy Code and such permanent injunction will remain in effect until the Case is closed pursuant to Section 350 of the Bankruptcy Code except as otherwise expressly provided in the Plan.

9.      <u>Notice of Entry of Confirmation Order</u>. Within thirty (30) days after the date of the entry of this Order, pursuant to Fed. R. Banks. P. 2002(f)(7) and 3020(c), the Reorganized Debtor shall mail to all holders of claims and parties in interest a notice of entry of this Order and the Effective Date, if such date has occurred.

10.     <u>Controlling Effect of the Plan and Order</u>. To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, any interest or any other matter, the terms of the Plan shall control. To the extent that the terms of this Order are inconsistent with the terms of the Plan, by reason of, among other things, any modification made to the Plan resulting from this Order, the terms of this Order shall control.

11.     <u>Implementation of the Plan</u>. Upon the entry of this Order by the Court, the Debtor shall be deemed authorized, without further order of this Court, to take any and all actions and

**P a g e | 11**

Debtor:            In re Dianna Guadagnino
Case No.:          17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

execute any and all documents which are believed reasonably necessary or appropriate to carry out the purposes and intent of the Plan.

12.      Distributions. All distributions to be made by the Reorganized Debtor under the Plan shall be timely and proper if mailed by first class mail to the address listed in such person's proof of claim filed in the Bankruptcy Case, or, if the foregoing is not applicable, the last known address of the persons entitled thereto.

13.      Confirmation Hearing Findings and Conclusions. Any of the Court's subsidiary findings and conclusions made on the record at the hearing on confirmation of the Plan are incorporated herein by reference.

14.      Discharge Of All Claims And Interests and Releases

A.       Releases

(i) Subject to the occurrence of the Effective Date, and the Debtor's completion of all payments pursuant to the Plan and this Order, the Debtor and Reorganized Debtor are hereby discharged from any debt that arose before the Confirmation Date and any debt of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not proof of Claim is filed or is deemed filed, whether or not such Claim is Allowed and whether or not the holder of such Claim has voted on the Plan.

(ii) Furthermore, but in no way limiting the generality of the foregoing, subject to the Debtor's completion of all payments pursuant to the Plan and this Order, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release, effective as of the date all Plan payments are completed, and the Debtor's material performance of its obligations pursuant to the Plan and this Order, of all Claims and Causes of Action against,

**P a g e | 12**
Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

liabilities of, liens on and obligations of and Interests in the Debtor or the Reorganized Debtor, whether known or unknown, regardless of whether a proof of Claim or Interest was filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or Interest was filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan.

(iii) In addition, but in no way limiting the generality of the foregoing, any Person who receives any distribution pursuant to the Plan shall, subject to the Debtor's completion of all payments pursuant to the Plan and this Order,  have released the Debtor, the Reorganized Debtor, successors and assigns of the Debtor, attorneys, advisors, financial advisors, and investment bankers of the Debtor, from any Cause of Action based on the same subject matter as the Claim or Interest on which the distribution is received.  The release described in the preceding sentence will be enforceable as a matter of contract against any Person that accepts any distribution pursuant to the Plan.

B        Exculpation of Debtor' Officers and Directors.

(i) The Debtor, the Reorganized Debtor, and their respective members, officers, directors (including any Professionals retained by such persons) will have no liability for any act or omission in connection with, or arising out of, the pursuit of approval of the Plan or the pre-petition or post-petition solicitation of votes for or confirmation of the Plan, or the consummation of the Plan, or the transaction contemplated and effectuated by the Plan or the

12

**P a g e | 13**

Debtor:              In re Dianna Guadagnino
Case No.:            17-12951 (CMG)
Caption of Order:  **ORDER CONFIRMING DEBTOR'S PLAN**

administration of the Plan or the property to be distributed under the Plan, or any other action or

omission during the administration of the Debtor's estate or in contemplation of this Chapter 11

Case except for willful misconduct or gross negligence as determined by a  Final Order of the

Court and, in all respects, will be entitled to rely upon the advice of counsel with respect to their

duties and responsibilities under the Plan.  The Debtor, the Reorganized Debtor, shall be deemed

to have proposed the Plan in good faith and in compliance with the applicable provisions of the

Bankruptcy Code.

15.     The Reorganized Debtor and its respective directors, officers, members and their

respective agents and attorneys are authorized and empowered to issue, execute, deliver, file, or

record any agreement, document, or security, including, without limitation, the documents

contained, of action contemplated by the documents contained, in the Plan, as modified,

amended, and supplemented, in substantially the form included therein, and to take any action

necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with

its terms, or take any or all actions authorized to be taken pursuant to the Plan, and any release,

amendment, or restatement of any bylaws, articles of organization, charter or other organization

documents of the Debtor, whether or not specifically referred to in the Plan, without further order

of the Court, and any or all such documents shall be accepted by each of the respective state

filing offices and recorded in accordance with applicable state law and shall become effective in

accordance with their terms and the provisions of state law.

16.     This Confirmation Order shall constitute all approvals and consents required, if

any, by the laws, rules, or regulations of any state or any other governmental authority with

respect to the implementation or consummation of the Plan and any documents, instruments, or

13

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

agreements referred to in, or contemplated by, the Plan, and any amendments or modifications to any such documents, instruments or agreements, and any other acts referred to in or contemplated by the Plan, and any documents, instruments, or agreements referred to in, or contemplated by, the Plan, and any amendments or modifications to any such documents, instruments or agreements.

17.     Retention of Jurisdiction. This Court hereby retains jurisdiction over the Debtor and its Assets until the Effective Date as if this Order had not been entered. From and after the Effective Date until the entry of a final decree closing the Bankruptcy Case, this Court shall retain exclusive jurisdiction to enforce the provisions, purposes and intent of the Plan and this Order and of all matters arising under, arising out of, or related to, the Bankruptcy Case, the Plan and this Order pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code.

18.     The Plan and this Order shall supersede any orders of the Bankruptcy Court issued prior to the Effective Date that are inconsistent with either the Plan or this Order.   The terms of the February 13, 2019 Order Approving Post-Petition Financing (Doc. no. 155) and the May 9, 2019 Amended Order Approving Post-Petition Financing November 16, 2017 Order (Doc. No. 176), approving the refinancing of M&T Bank's mortgage, are incorporated herein.

19.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

20.     The treatment of Bank of America set forth in Section 2.2 of the Plan is hereby modified to provide an annual interest rate of 4% per annum, calculated based upon a payoff

**P a g e | 15**

Debtor:          In re Dianna Guadagnino
Case No.:        17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

amount of $391,478.55 as of October 31, 2018.  In addition, Bank of America casts its ballot in favor of confirmation of the Plan.

21.      The Plan's treatment of Navient set forth in Section 2.2 of the Plan is hereby modified to provide that the Plan payments will not fully satisfy Navient's claims against the Debtor. Further, Paragraphs 14.A.(i), (ii) and (iii) of this Confirmation Order, related to discharge and release, shall not be applicable to Navient's claim(s) against the Debtor, arising from a non-dischargeable Federal Family Education Loan Program (FFELP) educational loan serviced by Navient, which obligation shall survive discharge in this matter in its entirety, according to the original loan(s) terms, not modified by this Plan and Confirmation Order in any way, less payments under the Plan and this Order, which shall be applied to the Debtor's account in accordance with the terms of the FFELP educational loan agreement. The interest rate on the loan will continue at the rate of 3.625%, which is subject to change pursuant to the terms of the loan documents.  In addition, Navient casts its ballot in favor of confirmation of the Plan.

22.      The Plan's treatment of Specialized Loan Servicing LLC ("SLS"), servicer for US Bank National (claim # 12), set forth in section 2.2 of the Plan is hereby modified to provide for an interest rate of 7.625% per annum, a payoff amount of $311,821.42 as of November 20, 2018 and requires monthly payments of $2,207.05 for 360 months.  Any additional post-petition advances by SLS, or a prior servicer of the loan, to third parties for the Debtor's benefit remain due and owing and will be incorporated into a shortage payment due over the first sixty (60) months following entry of this Order, subject to SLS providing the Debtor with written notice of any such post-petition advances, including an itemized calculation thereof, within sixty (60) days of the entry of this Order. The loan will require escrowing of real estate taxes and insurance

P a g e | **16**
Debtor:          In re Dianna Guadagnino
Case No.:       17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

costs, and accordingly, actual monthly payments will be higher that reflected above.  SLS will

retain its judgment of foreclosure, entered in the Superior Court of New Jersey on or about

December 2016.  In the event of a default by the Debtor, SLS will provide written notice to the

Debtor and the Debtor's counsel.  During the first sixty (60) months following the entry of this

Order, such notice will trigger a 60 day cure period, within which the Debtor must cure the

default.  Absent curing of the default, SLS may submit a Certification of Default with a form of

order granting SLS relief from the stay provisions of the Plan, on notice to the Debtor and the

Debtor's counsel.  In the event of default more than sixty (60) months after the entry of this

Order, SLS may proceed with its rights and remedies available at law without any preliminary

bankruptcy requirements.  In addition, SLS  casts its ballot in favor of confirmation of the Plan.

23.     The Plan's treatment for Wells Fargo Bank, N.A., as Trustee for Carrington

Mortgage Loan Trust, Series 2006-FRE1 Asset-Backed Pass-Through Certificates ("Wells

Fargo") set forth in section 2.2 of the Plan is hereby modified to provide;  (i) an annual interest

rate of 3.375% per annum.;  (ii) the present term of the loan will not be modified by the Plan;

(iii) monthly payments will be approximately $1,923.62, subject to change pursuant to the loan

documents; and (iv) the payoff amount is $526,629.05, excluding counsel fees, as of November

30, 2018.  In addition,  Wells Fargo casts its ballot in favor of confirmation of the Plan.

24.     The Plan's treatment of M&T Bank as set forth in section 2.2 of the Plan is

hereby modified to reflect that M&T Bank's claim has been fully satisfied from the new

financing provided by Toby Mug Financial LLC.

25.     The Plan's treatment of Diane Clemente as set forth in Section 2.2 of the Plan is

hereby modified to reflect that Ms. Clemente will not retain her lien upon the 287 Communipaw

**P a g e | 17**

Debtor:              In re Dianna Guadagnino
Case No.:            17-12951 (CMG)
Caption of Order:   **ORDER CONFIRMING DEBTOR'S PLAN**

Avenue, Jersey City, New Jerseyproperty, nor any other liens, in light of Ms. Clemente's

voluntary execution of a discharge of her second mortgage upon the foregoing property in

connection with the Toby Mug Financial LLC refinancing referenced above.

F:\EDELBERG\Guadagnino Dianna\Pleadings\confirmation order.doc

# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(a)**

**CULLEN AND DYKMAN LLP**
433 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-1300 (Tel)
(201) 488-6541 (Fax)
David Edelberg, Esq.
dedelberg@cullenanddykman.com
*Counsel to Dianna Guadagnino*

| In Re: | Chapter 11 |
|---|---|
| Dianna Guadagnino, | Case No: 17-12951 (RG) |
| Debtor. | Judge: Rosemary Gambardella |

## SMALL BUSINESS DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT FOR DIANNA GUADAGNINO

This Combined Plan of Reorganization and Disclosure Statement is presented to you to inform you of the proposed Plan for restructuring the debt of Dianna Guadagnino (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2018 (THE "BALLOT DEADLINE"). THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: CULLEN AND DYKMAN LLP, ATTN: DAVID EDELBERG, ESQ., 433 HACKENSACK AVENUE, HACKENSACK, NJ 07601 (THE "BALLOTING AGENT").**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR**

_____, 2018 AT 10:00 A.M. IN COURTROOM NO. 3E AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

The information contained in this Combined Plan and Disclosure Statement has been provided by the Debtor based upon its knowledge of the records, business and affairs of the Debtor. Except as otherwise expressly indicated, such information has not been subject to audit or independent review.

Your rights may be affected by this Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

Dated: July 31, 2018

CULLEN AND DYKMAN LLP
David Edelberg, Esq.
433 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-1300 (Tel)
(201) 488-6541 (Fax)
dedelberg@cullenanddykman.com

## TABLE OF CONTENTS

ARTICLE 1 - BACKGROUND OF THE DEBTOR .................................................. 2

1.2.    Nature of the Debtor's Business. ....................................................... 2

1.3.    Legal Structure and Ownership. ........................................................ 2

1.4.    Debtor's Assets. ................................................................................. 2

1.5.    Debtor's Liabilities. ........................................................................... 3

1.6.    Current and Historical Financial Conditions. .................................... 3

1.7.    Events Leading to the Filing of the Bankruptcy Case. ...................... 3

1.8.    Significant Events During the Bankruptcy Case. .............................. 4

1.9.    Projected Recovery of Avoidable Transfers ...................................... 5

ARTICLE 2 - THE PLAN ................................................................................... 5

2.1.    Unclassified Claims. .......................................................................... 5

2.2     Classes of Claims and Equity Interests. ............................................ 8

2.3.    Estimated Number and Amount of Claims Objections. ..................... 13

2.4.    Provisions Regarding Distributions on Account of Claims ............... 13

2.5.    Treatment of Executory Contracts and Unexpired Leases. ............... 15

2.6.    Means for Implementation of the Plan. ............................................. 16

2.7.    Distribution Agent. ............................................................................ 16

2.8.    Post-Confirmation Management. ....................................................... 16

2.9.    Tax Consequences of the Plan. ......................................................... 16

2.10.   Risk Factors/Mitigating Factors. ...................................................... 17

2.11.   Confirmation of Plan ......................................................................... 18

ARTICLE 3 - FEASIBILITY OF THE PLAN .................................................. 22

3.1.    Ability to Initially Fund Plan. ........................................................... 22

3.2.    Ability to Make Future Plan Payments And Operate Without Further
Reorganization. ............................................................................................. 22

ARTICLE 4 - LIQUIDATION VALUATION ................................................... 29

ARTICLE 5 – DISCHARGE, INJUNCTION AND EXCULPATION ............... 24

ARTICLE 6 – GENERAL PROVISIONS ........................................................ 25

6.1.    Title to Assets .................................................................................... 25

6.2.    Binding Effect. ................................................................................... 25

6.3.    Severability. ....................................................................................... 25

**6.4.**   **Retention of Jurisdiction by the Bankruptcy Court.** .................................................... 25

**6.5.**   **Captions.** ..................................................................................................................... 25

**6.6.**   **Modification of Plan.** ................................................................................................. 26

**6.7.**   **Final Decree.** .............................................................................................................. 26

**6.8.**   **Governing Law.** .......................................................................................................... 26

**6.9.**    **Effectuating Documents and Further Transactions.** ................................................ 26

**6.10.**  **Confirmation Order and Plan Control.** .................................................................... 26

**6.11.**  **Prepayment.** ................................................................................................................ 26

**ARTICLE 7 - ATTACHMENTS** .................................................................................................. 27

**ARTICLE 8 – FREQUENTLY ASKED QUESTIONS** ............................................................... 27

**ARTICLE 9 - DEFINITIONS** ....................................................................................................... 28

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This Plan is a plan of reorganization that proposes to pay creditors of the Debtor from the stream of income generated from the rents arising from the Debtor's real property.

This Plan provides for four (4) Classes of Secured Claims; one (1) Class of student loan claims; one (1) Class of General Unsecured Claims; and one (1) class of Equity Interests.  There are also two (2) unclassified categories of Claims under the Bankruptcy Code – Administrative Claims and Priority Tax Claims.   Holders of Secured Claims will have their claims restructured and paid in accordance with the modified terms set forth herein.  Holders of General Unsecured Claims will receive quarterly Distributions of their *pro rata* share of five thousand ($5,000) to receive Distributions totaling approximately ten (22%) percent of the Allowed amount of their claims.  The Debtor will retain her ownership of the real property.

**THE DEBTOR RECOMMENDS THAT ALL HOLDERS OF CLAIMS VOTE TO ACCEPT THE PLAN.**

1

# ARTICLE 1
## BACKGROUND OF THE DEBTOR

### 1.1.    Filing of the Debtor's Chapter 11 Case.

On February 16, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Case is pending in the Bankruptcy Court in Newark, New Jersey before the Honorable Rosemary Gambardella.

As of the Petition Date, most actions and proceedings against the Debtor and acts to obtain property from the Debtor were stayed under section 362 of the Bankruptcy Code. During the administration of the Chapter 11 Case, the Debtor managed her business and affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to the control and supervision of the Court.

### 1.2.    Nature of the Debtor's Business.

The Debtor owns four (4) properties located in Jersey City at: (i) 194 Pine Street; (ii) 252 Suydam Street; (iii) 104 Lafayette Street; and (iv) 287 Communipaw Avenue (collectively, the "Properties"). Accordingly, the Debtor's primary revenue stream is derived from rental income generated by the Properties and fourteen garages associated therewith.

**Other Income -**

### 1.3.    Legal Structure and Ownership.

The Debtor is an individual residing at 287 Communipaw Avenue, Jersey City, New Jersey. The Debtor owns sole title to the Properties and 14 garages associated therewith.

### 1.4.    Debtor's Assets.

The Debtor's assets as of June 30, 2018 consist primarily of:

| Property | Estimated Value | Lien Lolder and Balance Due |
|---|---|---|
| 287 Communipaw Avenue, Jersey City, New Jersey Property[1](includes 9 garages) | $500,000 | M&T Bank, Successor by merger to Hudson City Savings Bank - $417,304.93 (as of May 31, 2018) |
| 287 Communipaw Avenue, Jersey City, New Jersey Property | $50,000 | Dianne Clemente, 2nd Mortgage - $50,000 |
| 252 Suydam Street, Jersey City, New Jersey Property (includes 5 garages) | $500,000. | Wells Fargo Bank, as Trustee for Carrington Mortgage Loan Trust Series 2006-FRE 1 Asset Backed BASSP Thru |

[1] There is also a second mortgage in the amount of approximately $50,000.00 due to an individual named Dianne Clemente.

|  |  | Certificates - $522,826.38 (as of May 2, 2018) |
|---|---|---|

| **Property** | **Estimated Value** | **Lien Lolder and Balance Due** |
|---|---|---|
| 104 Lafayette Street, Jersey City, New Jersey Property | $420,000 | Wells Fargo Bank – $312,123.05 |
| 194 Pine Street, Jersey City, New Jersey Property | $420,000 | Bank of America – $383,710.68 |
| **TOTAL** |  | $1,665,963.79 |

### 1.5.    Debtor's Other Liabilities.

The Debtor's Schedules reflect administrative priority tax claims of approximately $4,000.00, a student loan claim of approximately $9,000.00 and unsecured creditor claims of approximately $350,000.00.

The Internal Revenue Service (the "IRS") has filed a priority tax claim against the Debtor's estate in the amount of $500.00 based on unfiled tax returns for 2015 and 2016. In addition, the State of New Jersey has filed a claim in the amount of $8,581.00 based on unfiled tax returns for 2014, 2015 and 2016. All but $600.00 of such claim is filed as a priority claim.

In addition, the State of New Jersey has also filed a general unsecured claim in the amount of $3,424.00 for unfiled tax returns for 2012 and 2013. The Debtor intends to furnish the IRS and State of New Jersey with documentation that will enable such taxing authorities to withdraw or substantially reduce their claim. No other priority claims have been asserted against the Debtor's estate as of the date of this Plan.

### 1.6.    Current and Historical Financial Conditions.

Since the Petition Date, the Debtor has stabilized her operations by, among other things, resuming regular monthly payments upon the first mortgage obligations upon the Properties, resuming quarterly payments of real estate taxes related to the Properties, performing various repairs, evicting non-paying tenants and bringing in replacement tenants, often at higher rent rates than the prior occupants of the unit. The Debtor has remained current on her post-petition ordinary course of business payment obligations during the pendency of the Chapter 11 Case.

### 1.7.    Events Leading to the Filing of the Bankruptcy Case.

Prior to the Petition Date, the Debtor experienced problems with vacancies in the Properties, and consequently, was unable to remit regular monthly payments upon the Properties. As a result, several of the mortgagees instituted foreclosure actions. M&T Bank successfully obtained a judgment of foreclosure and had a Sheriff's sale scheduled on February 16, 2017 regarding the 287 Communipaw Avenue Property. As a result, the Debtor was forced to file a Chapter 11 Petition in order to stop such sale, stabilize the operation of the Properties, and resume regular monthly mortgage payments and quarterly tax payments.

### 1.8.    Significant Events During the Bankruptcy Case.

#### A.    Use of Cash Collateral

Pursuant to an Order dated March 22, 2017, the Debtor was authorized to collect the rents from the Properties, satisfy all expenses associated with the Properties, and maintain regular monthly payments to the mortgagees.

#### B.    Employment of Debtor's Professionals

The Debtor retained the law firm of Cullen and Dykman LLP ("C&D") as general bankruptcy counsel in connection with the Chapter 11 Case. By Order dated March 1, 2017, the Court approved the retention of C&D as counsel to the Debtor, effective as of the Petition Date.

The Debtor also retained the accounting firm of Peter Mertz, CPA ("Mertz") as accountant to the Debtor in connection with the Chapter 11 Case, which retention was approved by order of the Court dated May 15, 2017.

#### C.    Claims Administration

On or about March 27, 2017, the Debtor filed its Schedules of Assets and Liabilities and its Statement of Financial Affairs which, among other things, listed real property having a value of $2,300,000.00, personal property having a value of approximately $23,500.00; secured claims in the amount of approximately $1,650,000.00 and general unsecured claims of approximately $350,000.00.  On March 22, 2017, the United States Trustee conducted the meeting of the Debtor's creditors under section 341 of the Bankruptcy Code.

Pursuant to the *Notice of Chapter 11 Bankruptcy Case* distributed by the Court on February 17, 2017. the Court established June 20, 2017 as the last day for non-governmental units to file proofs of Claim for Claims arising prior to the Petition Date.

#### D.    U.S. Bank National Association's Application Seeking Relief from the Automatic Stay.

On October 6, 2017, U.S. Bank filed an application seeking relief from the automatic stay regarding the 104 Lafayette Street property.  U.S. Bank's application asserted that the Debtor was not making monthly mortgage payments to U.S. Bank, and accordingly, asserted that there was cause for granting U.S. Bank relief from the automatic stay.  Subsequently, the Debtor demonstrated to U.S. Bank that monthly payments had been remitted to U.S. Bank since May 2017.  Consequently, the Debtor entered into a consent order with U.S. Bank continuing the automatic stay in effect.

### E.    Significant Restructuring and Operational Changes

During the pendency of the Chapter 11 case, the Debtor has become significantly more involved with managing and maintaining the Property. Numerous repairs have been made to the Properties; problematic tenants have been evicted; upgrades have been installed to many of the units, and in many cases replacement tenants are paying higher rental amounts than the prior tenant. In addition, tenants are now paying all utilities at the 194 Pine Street and 104 Lafayette Street properties.

### 1.9.    Projected Recovery of Avoidable Transfers

The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor is continuing to investigate other potential fraudulent, preferential or other avoidable transfers and any applicable defenses, and the Debtor anticipates completing its investigation within 90 days of the Confirmation Date. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

### ARTICLE 2
### THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for the purpose of payment. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. Under this Plan, holders of Claims in all Classes are entitled to vote. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the Allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

Your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired under a plan vote to accept such plan, unless the "cramdown" provisions of the Bankruptcy Code are employed. The Debtor reserves its right to seek to "cramdown" the Plan on non-accepting Classes of Claims and Equity Interests.

### 2.1.    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Claims and Priority Tax Claims are not

They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any class:

### A.    Administrative Claims

The Debtor must pay all Administrative Claims in full. If an Administrative Claim is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Claim, or in other words, "allow" the Administrative Claim. Any Administrative Claim that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Claim is disputed, payment will be made after the Administrative Claim is Allowed by the Bankruptcy Court.

There are several types of Administrative Claims, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Claim.

3. Administrative Claims also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Claims and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | TBD | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claim | $0.00 | Paid in full on the Effective Date or according to separate written agreement. |

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Professional fees, as approved by the Bankruptcy Court | C&D - $15,000.00 Peter Mertz, CPA – $2,000.00 | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
| Clerk's Office fees | De minimus | Paid in full on the Effective Date. |
| Other Administrative Claims | $0.00 | Paid in full on the Effective Date or according to separate written agreement. |
| United States Trustee Fees[2] | | Paid in full on the Effective Date. |
| **TOTAL** | **$17,000.00** | |

### B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Bankruptcy Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

---

[2] All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

7

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| IRS (Gross income) | $500.00 | Unassessed estimated liability/ Unfiled 2015 and 2016 Tax Returns | After providing the IRS with documentation that the Debtor anticipates will result in the withdrawal or substantial reduction of the claim, the Debtor will pay any remaining balance in Cash in full on or as soon as reasonably practicable after the Effective Date, unless otherwise agreed. |
| NJ Tax Division (Income taxes) | $8,581.00 | Unassessed estimated liability/ Unfiled 2014, 2015 and 2016 Tax Returns/ $7,926.19 priority claim | After providing the NJ Tax Division with documentation that the Debtor anticipates will result in the withdrawal or substantial reduction of the claim, the Debtor will pay any remaining balance in Cash in full on or as soon as reasonably practicable after the Effective Date, unless otherwise agreed. |
| NJ Tax Division (Income taxes) | $3,424.00 | Unassessed estimated liability/ Unfiled 2012 and 2013 Tax Returns/general unsecured | The Debtor will pay any amount determined to be due and owing in Cash in full on or as soon as reasonably practicable after the Effective Date, unless otherwise agreed. |

### 2.2    Classes of Claims and Equity Interests.

The following are the Classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff under § 553 of the Bankruptcy Code) to the extent Allowed as Secured Claims under § 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim.

8

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class Number | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | **Secured Claim of M&T Bank as the Successor by Merger of Citi Savings Bank**<br><br>Collateral Description: 287 Communipaw Avenue, Jersey City, New Jersey<br><br>Balance Due Allowed Secured Amount:<br><br>$417,304.00<br><br>Priority of Lien: First<br><br>Principal Owed: Unknown<br><br>Pre-petition arrearage: Unknown<br><br>Total Claim: $407,802.00 | No | Yes | Monthly Payment: $1,943.08<br><br>Payments Begin: On or around the first day of the first month following the Effective Date<br><br>Payments End: The balance due will be restructured into a 30 year mortgage utilizing a 30 year amortization schedule.<br><br>Interest Rate: 4% per annum<br><br>Treatment of Lien: Retained |
| 2 | **Secured Claim of Wells Fargo Bank as Trustee for Carrington Mortgage LoanTrust Series 2006 – FRE 1 Asset Backed BASSP Thru Certificates**<br><br>Collateral Description: 252 Suydam Street, Jersey City, New Jersey<br><br>Balance Due Allowed Secured Amount:<br><br>$522,826.38 | No | Impaired | Monthly Payment: $1,753.87<br><br>Payments Begin: On or around the first day of the first month following the Effective Date<br><br>Payments End: The balance due will be restructured into a 30 year mortgage utilizing a 30 year amortization schedule.<br><br>Interest Rate: 3% per |

9

| Class Number | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
|  | Priority of Lien:  First<br><br>Principal Owed:  Unknown<br><br>Pre-petition arrearage: Unknown<br><br>Total Claim:  $512,328.06 |  |  | annum<br><br>Treatment of Lien: Retained |
| 3 | **Secured Claim of Wells Fargo Bank**<br><br>Collateral Description: 104 Lafayette Street, Jersey City, New Jersey<br><br>Balance Due Allowed Secured Amount:<br><br>$312,123.05<br><br>Priority of Lien:  First<br><br>Principal Owed:  Unknown<br><br>Pre-petition arrearage: Unknown<br><br>Total Claim:  $312,123.05 | No | Impaired | Monthly Payment: $1,479.99<br><br>Payments Begin:  On or around the first day of the first month following the Effective Date<br><br>Payments End:  The balance due will be restructured into a 30 year mortgage utilizing a 30 year amortization schedule.<br><br>Interest Rate:  4% per annum<br><br>Treatment of Lien: Retained |
| 4 | **Secured Claim of Bank of America**<br><br>Collateral Description: 194 Pine Street, Jersey City, New Jersey | No | Impaired | Monthly Payment: $1,623.10<br><br>Payments Begin:  On or around the first day of the first month following the Effective Date |

| Class Number | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | Balance Due Allowed Secured Amount:<br><br>$383,710.68<br><br>Priority of Lien:  First<br><br>Principal Owed:  Unknown<br><br>Pre-petition arrearage: Unknown<br><br><br>Total Claim:  $383,710.68 | | | Payments End:  The balance due will be restructured into a 30 year mortgage utilizing a 30 year amortization schedule.<br><br>Interest Rate:  3% per annum<br><br>Treatment of Lien: Retained |
| 5 | Dianne Clemente<br><br>Collateral Description:<br><br>287 Communipaw Avenue, Jersey City, New Jersey<br><br>Balance Due:<br><br>$50,000.00<br><br>Total Claim:  $50,000.00 | Yes | Impaired | Monthly Payment: $200.00<br><br>Payments Begin:  On or around the first day of the first month following the Effective Date.<br><br>Payments End:  After 24 consecutive monthly payments this obligation will be fully satisfied.<br><br>Treatment of Lien: Retained, until completion of the 24 monthly payments, at which point the lien and claim will be fully satisfied. |

The amounts set forth above are subject to further reduction based on any payments to be made under the Cash Collateral Order and applied to the Secured Claims prior to the Confirmation Date.

**B.**     **Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the

Bankruptcy Code are required to be placed in Classes. The Bankruptcy Code requires that each holder of such a Claim receive Cash on the Effective Date of the Plan equal to the Allowed amount of such Claim. However, a Class of holders of such Claims may vote to accept different treatment.

There are no Claims in these categories filed against the Debtor's estate.

### C.    Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Class 4, which contains General Unsecured Claims against the Debtor:

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | Navient Student Loan Claim | Impaired | Paid in full, without interest, by monthly payments of $150.00 – for 40 months in full satisfaction of this Claim. |
| 7 | General Unsecured Claims | Impaired | The Allowed General Unsecured Claims total approximately $350,000.00<br><br>Quarterly Payment: $5,000 for 16 quarters.<br><br>Payments Begin: Following payment of Administrative Claims, these payments will be remitted pro rata.  On or around the fifteenth (15th) day of the first month following the end of the first quarter after the Effective Date has occurred and Administrative Claims have been paid in full.<br><br>Payments End: 8 quarterly payments.<br><br>Estimated Percent of Claims Paid:  10 to 15% |

### D.    Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 8 | Equity Interests | Unimpaired | One hundred (100%) percent of the Equity Interests in the Debtor shall remain vested in the holders of membership interests in the Debtor as of the Petition Date.  In order to retain such Equity Interests, the Debtor shall contribute the sum of ten thousand ($10,000.00) dollars to fund payments required to be made under the Plan. |

### 2.3.   Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 90 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

Except to the extent that a Claim is already Allowed pursuant to a Final Order, the Debtor reserves the right to object to Claims.  Therefore, even if your Claim is Allowed for voting purposes, you may not be entitled to a Distribution if an objection to your Claim is later upheld.

All Claim objections may be litigated to Final Order; provided, however, that the Debtor may compromise and settle, withdraw, or resolve by any other method approved by the Court, any objections to any Claim and any Disputed Claim.

### 2.4.   Provisions Regarding Distributions on Account of Claims.

### A.   Claims Filed After Bar Date

Any Claim filed after the Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.  Claims listed on the Debtor's Schedules or for which a proof of Claim has been filed may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of the Debtor.

13

### B.   Transmittal of Distributions and Notices

(a)   Any property or notices to be sent pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to the recipient or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by the recipient or his authorized agent. Absent any of the foregoing, the address set forth in the relevant Schedule for that recipient may be used. Property distributed in accordance with this Section shall be deemed delivered to such recipient regardless of whether such property is actually received. Notwithstanding anything in this Plan to the contrary, the Distribution Agent shall not have any obligation to attempt to locate any person or entity that is or becomes entitled to receive any Distribution under the Plan with regard to any undeliverable or uncashed Distributions.

(b)   A holder of a Claim or Equity Interest may designate a different address for notices and Distributions by notifying the Debtor and the Distribution Agent of that address in writing. Such notification shall be effective upon receipt.

(c)   If any Distribution to a holder of a Claim is returned as undeliverable (e.g., "forwarding time expired, "addressee unknown", etc.), no further Distributions to such holder shall be made unless and until the Distribution Agent is timely notified within the time limits set forth in Section 2.4(C) below, in writing, of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest.

### C.   Unclaimed Property

If any Distribution remains unclaimed for a period of ninety (90) days following the Distribution Date to the holder of an Allowed Claim, the Distribution shall constitute unclaimed property and the holder shall no longer be entitled to such Distribution. All such property shall be retained by the Distribution Agent for distribution pursuant to the terms of the Plan, subject, however, to the Distribution Agent's sole discretion to distribute unclaimed property to holders entitled thereto if such holders are subsequently located.

### D.   No Distributions on Disputed Claims

A Disputed Claim is a Claim that has not been Allowed or Disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

No Distribution will be made on account of a Disputed Claim unless such claim is Allowed by a Final Order.

### E.   Setoffs and Recoupments

Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, the Debtor may, pursuant to applicable law,

14

setoff or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Debtor, nor any provision of this Plan, shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder.  To the extent the Debtor fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to such creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery against such Creditor.  The Debtor may seek periodic Court approval for any such setoffs or recoupments.

### 2.5. <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[X] Assumption of Executory Contracts.

All Executory Contracts and/or unexpired leases not subject to a motion to reject filed by the Debtor with the Bankruptcy Court on or before the Confirmation Date shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

If your unexpired lease or executory contract has been subject to a motion to reject filed on or before the Confirmation Date, the Debtor has elected not to continue to perform the obligations under your contract or lease. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is Thirty (30) Days following the Confirmation Date.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is

15

not timely filed, unless the Bankruptcy Court orders otherwise.

### 2.6.   **Means for Implementation of the Plan.**

The Distributions required to be made under the Plan shall be funded by income generated from the Debtor's operations and a Ten  thousand ($10,000) dollar equity contribution from the Debtor, together with any other funds received by the Debtor.

Having used the chapter 11 process to restructure certain aspects of her operations, following the Effective Date the reorganized Debtor will continue to operate her business in a manner similar to the way that it historically operated its business in the past.  In that regard, the Debtor shall continue to manage the Properties after the Effective Date and she shall be compensated in a manner consistent with her pre-petition compensation.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

As provided in Paragraph 2.1 of this Combined Plan and Disclosure Statement, all United States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the Effective Date, by the Debtor or any successor to the Debtor. All United States Trustee Fees which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor or any successor to the Debtor prior to the Debtor's case being closed, converted or dismissed.

### 2.7.   **Distribution Agent.**

Distributions to Creditors provided for in this Plan will be made by the Debtor's counsel, Cullen and Dykman, LLC, as Distribution Agent.  Per D.N.J. LBR 3021-1, compensation payable to the Distribution Agent shall be in accordance with the terms of its retention.

### 2.8.   **Post-Confirmation Management.**

The Debtor is an individual.  Consequently, her compensation will consist of all remaining net income, if any, following payments pursuant to the Plan.

### 2.9.   **Tax Consequences of the Plan.**

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR WITH RESPECT THERETO.

NOTHING HEREIN CONSTITUTES TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED HEREIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

### 2.10.   Risk Factors/Mitigating Factors.

HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### A.   Risk That Distributions Will be Less Than Anticipated

The projected distributions and recoveries set forth in this Disclosure Statement are based on the Debtor's estimate of Allowed Claims and Cash available for Distribution. There can be no assurance that the estimates will prove accurate.

### B.   Bankruptcy Risks

(a)   Objection to Classifications

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Court would reach the same conclusion.

(b)   Risk of Non-Confirmation of the Plan

Even if the required Classes accept the Plan, the Plan might not be confirmed by the Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization unless such liquidation is proposed in the plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies all the requirements for confirmation of a plan of reorganization under the Bankruptcy Code. There can be no assurance, however, that the Court would also conclude that the requirements for confirmation of the Plan have been satisfied.

17

### 2.11. Confirmation of Plan

#### A.   Acceptance

The Plan is predicated on the holders of Claims in impaired Classes 1-7 voting to accept the Plan. In the event the requisite vote is not obtained, the Debtor has the right, assuming that at least one Class of impaired Claims has accepted the Plan, to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan notwithstanding rejection by one or more Classes of impaired Claims if the requirements described in Section 2.11(C) below are satisfied.

#### B.   Confirmation and Consummation

At the Confirmation Hearing, the Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section 1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor has complied with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the Debtor under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

- The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy and the Debtor must have disclosed the identity of any insider that the reorganized debtor will employ or retain, and the nature of any compensation for such insider.

- With respect to each class of impaired claims or interests, either each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Each class of claims or interests has either accepted the plan or is not impaired under the plan.

18

- Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative claims and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the order for relief in a case, of a value, as of the effective date, equal to the allowed amount of such claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan (unless such liquidation or reorganization is proposed in the plan).

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Classes not receiving a certain level of Distribution under the Plan, the Debtor believes that (i) the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, (ii) the Debtor has complied or will have complied with all of the requirements of chapter 11, and (iii) the Plan has been proposed in good faith.

## C.  **Cram Down**

**THE DEBTOR RESERVES THE RIGHT TO CRAM DOWN THE PLAN AGAINST NON-ACCEPTING CLASSES OF HOLDERS OF CLAIMS OR EQUITY INTERESTS.**

The Bankruptcy Court may confirm the Plan even if it is not accepted by all of the impaired Classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such Class or Classes. This power to confirm a Plan over dissenting classes is known as the "cram down". This provision is set forth in Section 1129(b) of the Bankruptcy Code and requires that, among other things, claimants must either receive the full value of their claims or, if they receive less, no Class with junior liquidation priority may receive anything unless such junior class contributes money or something of new value related to the plan.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law. A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan. By establishing separate Classes for the holders of each type of Claim and by treating each holder of a Claim in each Class identically, the Plan has been structured so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of

19

secured or unsecured claims or interests.  In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before any junior class may receive anything under the plan.  In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receives more than payment in full on its claims.

The Debtor believes the Plan is fair and equitable with respect to all classes because the Debtor is making a substantial and indispensable contribution in the form of her new capital contribution, and her management of the Properties, which contribution provides "new value" which inures to the benefit of all creditors of the Debtor's estate and maximizes the Distributions to such creditors under the Plan.

If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more of Classes of impaired Claims or Equity Interests have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Debtor will request that the Court confirm the Plan over the dissenting votes of such Classes in accordance with section 1129(b) of the Bankruptcy Code. The Debtor believes that the Plan satisfies the "cram down" requirements of the Bankruptcy Code.  The Debtor may seek confirmation of the Plan over the objection of dissenting Classes, as well as over the objection of individual holders of Claims or Equity Interests who are members of an accepting Class.

### D.     Voting Procedures and Standards

Holders of Claims in Classes that are "impaired" under the Plan (but not deemed to reject the Plan by virtue of receiving no Distributions thereunder) will receive a Ballot for the acceptance or rejection of the Plan.  Instructions on how to complete a Ballot and the deadline for voting on the Plan are contained in the solicitation materials accompanying this Plan.

The following procedures for allowance of Claims for purposes of voting on the Plan shall apply to votes upon the Plan:

(a)     Disputed Filed Claims.  With regard to a Claim that is the subject of an objection filed at least twenty (20) days prior to the Ballot Deadline, such Claim will be disallowed provisionally for voting purposes, except to the extent and in the manner that (i) the Debtor agrees that the Claim should be allowed for voting purposes in her objection to such Claim; or (ii) such Claim is allowed temporarily for voting purposes in accordance with Bankruptcy Rule 3018.

(b)     Claims Estimated for Voting Purposes.  With respect to a Claim that has been estimated or otherwise allowed for voting purposes by order of the Court, the amount and classification of such Claim will be that set by the Court.

(c)     Wholly Unliquidated Claims.  A Claim recorded in the Schedules or in the Clerk's records as wholly unliquidated, contingent and/or undetermined will be accorded one

20

vote, valued at one dollar, for the purposes of section 1126(c) of the Bankruptcy Code, unless the Claim is disputed as set forth in (a) above.

(d)     Late Claims.  With respect to a Claim as to which a proof of claim has not been timely filed (i.e., was filed after the Bar Date), the voting amount of such Claim (subject to any applicable limitations set forth below) will be equal to the amount listed, if any, in respect of such Claim in the Schedules, to the extent such Claim is not listed as contingent, unliquidated, or disputed, unless the Claim is disputed as set forth in (a) above.  If such Claim is either not listed in the Schedules, or is listed as contingent, unliquidated or disputed, then the Claim respecting such proof of claim will be disallowed provisionally for voting purposes.

(e)     Duplicate Claim.  A creditor will not be entitled to vote its Claim to the extent such Claim duplicates or has been superseded by another Claim of such creditor.

(f)     Undisputed Scheduled Claims.  With respect to a Claim that appears on the Schedules as undisputed, noncontingent and liquidated, and as to which no objection has been filed at least twenty (20) days prior to the Ballot Deadline, the amount and classification of such Claim shall be that specified in the Schedules unless superseded by an undisputed proof of claim.

(g)     Court Determined Claims.  With respect to a Claim for which an order has been entered reducing, reclassifying or allowing, the amount and classification of the Claim shall be that specified in such order.

The Ballots of creditors will be tabulated in accordance with the following procedures:

(i)     For the purpose of voting on the Plan, the Balloting Agent will be deemed to be in constructive receipt of any Ballot timely delivered to the address set forth above as designated for the receipt of Ballots cast on the Plan;

(ii)     Any Ballot received by the Balloting Agent after the Ballot Deadline shall not be counted;

(iii)     Pursuant to Bankruptcy Rule 3018(a), whenever a holder of a Claim submits more than one Ballot voting the same Claim prior to the Ballot Deadline, the last such Ballot sent and received shall count unless such holder has sufficient cause within the meaning of Bankruptcy Rule 3018(a) to submit, or the Debtor consents to the submission of, a superseding Ballot;

(iv)     If a Ballot does not include a Claim amount, the Ballot shall be deemed filed in the amount of a filed Claim, and if no Claim has been filed, in the amount of the Claim as specified in the Schedules, as long as the Claim is listed in the Schedules as undisputed, non-contingent or liquidated; otherwise, the Ballot shall not be counted.

(v)     If a holder of a Claim casts simultaneous duplicative Ballots voted inconsistently, then such Ballots shall not be counted;

(vi)     The authority of the signatory of each Ballot to complete and execute the Ballot

shall be presumed;

(vii)    Any Ballot that is not signed shall not be counted;

(viii)    Any Ballot received timely by the Balloting Agent by electronic communication (i.e. email) shall be counted but signed Ballots received by the Balloting Agent by facsimile will not be counted;

(ix)    A holder of a Claim must vote all of its Claims within a particular Class under the Plan either to accept or reject the Plan and may not split its vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan, or that indicates both a vote for and against the Plan, will not be counted; and

(x)    Any Ballot that is timely received and executed but does not indicate whether the holder of the relevant Claim is voting for or against the Plan shall not be counted.

IF A BALLOT IS DAMAGED OR LOST OR IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE BALLOTING AGENT.

A VOTE MAY BE DISREGARDED IF THE COURT DETERMINES, AFTER NOTICE AND A HEARING, THAT SUCH ACCEPTANCE OR REJECTION WAS NOT MADE OR SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE WITH THE PROVISIONS OF THE BANKRUPTCY CODE.

Any impaired Class of Claims that fails to achieve the requisite "accepted" vote will be deemed to have rejected the Plan.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as **Exhibit 1**.

### 3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must also show that it will have enough cash over the life of the Plan to make

22

the required Plan payments.

The Debtor has provided projected financial information. Those cash flow projections are listed in **Exhibit 2** and demonstrate that the Debtor will have sufficient cash to make the payments proposed under the Plan on the Effective Date and thereafter on each subsequent Distribution date.

The cash flow projections were prepared by the Debtor based on the Debtor's current books and records, anticipated future earnings as well as the Properties' historical performance. Although great effort has been made to be accurate, the Debtor and her professionals do not warrant the accuracy of the information contained herein.

The Debtor's cash flow projections show that the Debtor will have an aggregate quarterly average cash flow, after paying operating expenses and post-confirmation taxes and prior to making the payments provided for under this Plan, of approximately $6,000.00.  The final Plan payment is expected to be paid approximately two years after the end of the first quarter following the Effective Date.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION VALUATION.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit 3**.

If the Debtor were forced to liquidate, the Debtor's unsecured creditors are projected to receive a 14% distribution on account of what they are currently owed by the Debtor based upon (i) the Debtor's current assets and liabilities as set forth in its monthly operating reports; (ii) the impact that discontinuing operations would have on the Debtor's current accounts receivable; and (iv) the amounts that the Debtor would be required to pay any additional expenses of a chapter 7 trustee.  Under the Plan, on the other hand, the Debtor proposes to pay holders of Allowed Claims in Classes 1-4 one hundred (100%) percent of the Allowed amount of their Claims, and holders of Unsecured Claims in Class 7 approximately are projected to receive twenty-two (22%) percent of the Allowed amount of their Claims.

Thus, if this case was converted to Chapter 7, creditors would receive significantly less than they would receive under the Plan, as primarily secured creditors would receive some payment on account of their claims, and there would likely be limited funds available for distribution to unsecured creditors equaling 14% of their claims.  As such, all creditors are benefiting by the Plan as opposed to conversion to Chapter 7.  Moreover, The Debtor would not make the equity contribution which is a key component of funding under the Plan and would not waive her General Unsecured Claim against the Estate.  Further, even if creditors would receive a distribution in Chapter 7, it would result in even more administrative expenses in the form of

23

Chapter 7 trustee commissions and professional fees potentially reducing recoveries to unsecured creditors. These added costs would result in less of a distribution in Chapter 7 than proposed by the Plan.

Therefore, the Debtor believes that confirmation of the Plan is preferable to liquidation because, as described above, the Plan maximizes the value of all property available for distribution and maintains the Debtor as a viable going concern. Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of creditors.

## ARTICLE 5
## DISCHARGE, INJUNCTION AND EXCULPATION.

**5.1. Discharge.** On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

**5.2 Injunction.** The Confirmation Order will provide, among other things, that all Persons who have held, hold or may hold Claims against the Debtor, The Debtor or the Estate shall, with respect to any such Claims, be permanently enjoined from and after the Confirmation Date from (a) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims against the Debtor, The Debtor or the Estate, (b) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against the Debtor, The Debtor or the Estate on account of such Claims, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, The Debtor or the Estate or against the property or interests in the property of the Debtor, The Debtor or the Estate on account of any such Claims, (d) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (e) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (f) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan. Such injunction shall extend to the successors of the Debtor (including, without limitation, the reorganized Debtor entity) and their respective property and interests in property.

**5.3 Exculpation.** The Debtor and any current or former agent, representative, attorney, accountant, financial advisor or other professional of the Debtor, who provided services to the Estate during this Chapter 11 Case, will not have or incur any liability to any person or entity for any act taken or omission occurring on or after the Petition Date in connection with or related to the Estate, including but not limited to (i) the commencement and administration of the Chapter 11 Case, (ii) the operation of the Debtor during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (iv) any contract, instrument, release or other agreement or document entered into or any action taken or omitted to

24

be taken during the administration of the Chapter 11 Case or in connection with the Plan; or (v) any Distributions made pursuant to the Plan.  Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this section 5.3, or (ii) limit the liability of the Debtor's professionals to their respective clients pursuant to the New Jersey Rules of Professional Responsibility.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.   Title to Assets.

Except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the Estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

### 6.2.   Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action; and (vi) to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

### 6.5.   Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or revoting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7.    Final Decree.

Once the Estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.8.    Governing Law.

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, without giving effect to principles of conflict of laws.

### 6.9.    Effectuating Documents and Further Transactions.

The Debtor and its counsel shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan.

### 6.10.    Confirmation Order and Plan Control.

To the extent the Confirmation Order is inconsistent with this Combined Plan and Disclosure Statement or any other agreement, the Confirmation Order (and any later order of the Court) controls the Combined Plan and Disclosure Statement or any other agreement.

### 6.11.    Prepayment.

Except as otherwise provided in this Plan or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of any Allowed Claim at any time; *provided, however,* that any such prepayment shall not be violative to or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**ARTICLE 7**
**ATTACHMENTS**

26

The following documents accompany the Combined Plan and Disclosure Statement:

- Cash on hand as of the Effective Date, and the sources of that cash, annexed as **Exhibit 1**;

- Cash Flow Projections, annexed as **Exhibit 2**;

- Liquidation Analysis, annexed as **Exhibit 3**.

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure Statement?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Combined Plan and Disclosure Statement. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all claims and types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient,

the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is May 2, 2017. Ballots should be mailed to the following address:   Cullen and Dykman LLP, Attn: David Edelberg, Esq., 433 Hackensack Avenue, Hackensack, New Jersey 07601.

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided a summary of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administrative Claim.

**9.3.** **Administrative Claim**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Bankruptcy Code and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.4.** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of

28

the Bankruptcy Code.

**9.5.    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.6.    Bankruptcy Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.7.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.8.    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.9.    Bar Date:** March 14, 2017, the date established by the *Notice of Chapter 11 Bankruptcy Case* dated November 8, 2016 as the last date by which proofs of claim arising prior to the Petition Date must have been filed with the Court.

**9.10.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.11.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Dianna Guadagnino is the Debtor-in-Possession.

**9.12.    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.13.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.14.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Combined Plan and Disclosure Statement.

**9.15.    Confirmation Date**: The date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.16.    Confirmation Hearing**: The hearing to be held on May 9, 2017 to consider confirmation of the Plan.

**9.17.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.18.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.19.    Debtor** and **Debtor-in-Possession**: Dianna Guadagnino, the debtor-in-possession in this Chapter 11 Case.

**9.20.    Disallowed**:  With respect to any Claim, a Claim or portion thereof that (i) has been disallowed by a Final Order of the Court; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date

**9.21.    Disputed Claim**: Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.22.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.23.    Distribution Agent:**  Cullen and Dykman, LLP, as the entity responsible for making Distributions under the Plan.

**9.24.    Effective Date**: The date on which the Confirmation Order becomes a Final Order.

**9.25.    Equity Interest**: An ownership interest in the Debtor.

**9.26.    Estate** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    General Unsecured Claim**: Any Claim that is not an Administrative Claim, Priority Tax Claim, Secured Claim, or a Claim included within any other Class of Claims or Equity Interests.

**9.30.    Petition Date**: February 16, 2017, the date the chapter 11 petition for relief was filed.

**9.31.    Plan**: This Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.    Schedules**: Schedules and Statement of Financial Affairs, as amended or as may be amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Claim**: Pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor's interest in property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date. The defined term Secured Claim includes any Claim that is: (i) subject to an offset right against the holder of such Secured Claim under applicable law; and (ii) a secured claim against the Debtor pursuant to Sections 506(a) and 553 of the Bankruptcy Code.

Respectfully submitted,

CULLEN AND DYKMAN LLP

By: /s/ David Edelberg
David Edelberg, Esq.
433 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-1300 (Tel)
(201) 488-6541 (Fax)
dedelberg@cullenanddykman.com

31

## EXHIBIT 1
### Cash on hand on the Effective Date

| | |
|---|---|
| Cash on hand on the Effective Date | $21,000 |
| **Less** – | |
| Amount of Administrative Claims payable on Effective Date of Plan | $17,000 |
| Amount of statutory costs and charges | $500 |
| Amount of cure payments for executory contracts | N/A |
| Other Plan Payments due on Effective Date | N/A |
| Balancing Remaining | $3,500 |

The sources of the Cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | | |
|---|---|---|
| | Cash in the Debtor's bank account now: | $6,000 |
| + | Additional Cash Debtor will accumulate from net earnings between now and Effective Date: [based on anticipated licensing revenues] | $5,000 |
| + | Capital Contributions from The Debtor: | $10,000 |
| + | Other | $0.00 |
| | Total: | $21,000 |

## EXHIBIT 2

**EXPENSE BY PROPERTY**
**Dianna Guadagnino**

| ADDRESS | BANK/ NOTES | MONTHLY EXPENSE | AMOUNT | CURRENT RATE | ESCROW |
|---|---|---|---|---|---|
| | | | | | |
| 194 Pine St. | Bank of America | Taxes Monthly | 158.33 | 4% | |
| | | Insurance | 280.00 | | |
| | | Current mortgage P&I | 1623.18 | | |
| | | Maintenance/Garbage | 350.00 | | |
| | | Electric/Gas | 0.00(tenant pays) | | |
| | | Water | 0.00(tenant pays) | | |
| | | | | | |
| | | Total | 2411.51 | | |
| | | | | | |
| 287 Communipaw Ave. | M&T Bank | Taxes Monthly | 254.00 | 6.25% | |
| | | Insurance | 241.75 | | |
| | | Current mortgage P&I | 1943.08 | | |
| | | Maintenance/Garbage | 350.00 | | |
| | | Electric/Gas | 100.00 | | |
| | | Water | 100.00 | | |
| | | | | | |
| | | Total | 2988.83 | | |
| | | | | | |
| 252 Suydam Ave. | Carrington | Taxes Monthly | 236.83 | 3.375% | |
| | Deferment is 0% interest | Insurance | 235.70 | | |
| | | Current mortgage P&I | 1753.87 | | |
| | | Maintenance/Garbage | 350.00 | | |
| | | Electric/Gas | 100.00 | | |
| | | Water | 100.00 | | |
| | | | | | |
| | | Total | 2776.40 | | |
| | | | | | |
| 104 Lafayette | Wells Fargo | Taxes Monthly | 126.33 | 7.625% | |
| | | Insurance | 120.25 | | |
| | | Current Mortgage P&I | 1479.99 | | |
| | | Maintenance/Garbage | 350.00 | | |
| | | Electric/Gas | 0.00(tenant pays) | | |
| | | Water | 0.00(tenant pays) | | |
| | | Total | 2076.57 | | |
| | | | | | |
| | | Total Monthly Expenses | $10,253.31 | | |

**MONTHLY RENT ROLL BY PROPERTY**

**Dianna Guadagnino**

| Unit Number | Address | Tenant Name | Payment Amount |
|---|---|---|---|
|  | 194 Pine Street |  |  |
| 1 |  | Jayne Freeman | 2,225.00 |
|  | 252 Suydam Ave |  |  |
| 1 |  | Stephen and Christina Blanks | 1,650.00 |
| 2 |  | David Maxon | 1,950.00 |
|  | 104 Lafayette |  |  |
| 1 |  | Druva/Hertz | 2,800.00 |
|  | 287 Communipaw Ave. |  |  |
| 1 |  | Andreas Hertz | 1,700.00 |
| 2 |  | Ramsey Norman | 1,850.00 |
| 2 |  | Andrew Coyte | 500.00 |
| 2 |  | Jesse Amoroso | 600.00 |
|  | GARAGES – 287 Communipaw |  |  |
| Garage 1 |  | Eli Azra/Benvenisit | 250.00 |
| Garage 2 |  | Richard | 200.00 |
| Garage 3 |  | Richard | 200.00 |
| Garage 4 |  | Andreas Hertz | 200.00 |
| Garage 5 |  | Paz/Koby Benvenist | 260.00 |
| Garage 6 |  | John Ross | TRADE |
| Garage 7 |  | John Ross | TRADE |
| Garage 8 |  | Eli Azra/Benvenisit | 225.00 |
| Garage 9 |  | To be Rented | PERSONAL |
|  | GARAGES – 252 Suydam |  |  |
| Garage 1 |  | Paz/Koby Benvenisit | 250.00 |
| Garage 2 |  | Michael Ciechotski | 450.00 |
| Garage 3 |  | Eli Benvenisit | 750.00 |
| Garage 4 |  | James | 200.00 |
| Garage 5 |  | Dan Roorda | 200.00 |
|  |  |  |  |
|  |  |  |  |
| TOTAL |  |  | $16,460.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**EXHIBIT 3**

**Liquidation Analysis**

*Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | |
|---|---|
| a. Cash on hand | $ 6,000 |
| b. Accounts receivable | $ 1,200 |
| c. Inventory | $ 0 |
| d. Office furniture & equipment | $ 0 |
| e. Machinery & equipment | $ 0 |
| f. Automobiles | $ 0 |
| g. Building & Land | $ 0 |
| h. Customer list | $ 0 |
| i. Investment property | $ 0 |
| j. Lawsuits or other claims against third-parties | $ 0 |
| k. Other intangibles (such as avoiding powers actions) | $ 0 |
| l. 194 Pine Street | $ 0 (400,000 less 383,000 mortgage) |
| m. 287 Communipaw | $ 0 (450,000 less 417,000 mortgage less 10% cost of sale) |
| n. 252 Suydam Street | $ 0 (500,000 less 512,000 mortgage) |
| o. 104 Lafayette Street | $ 150,000 (400,000 less 312,000 mortgage less 10% cost of sale) |

| | |
|---|---|
| ***Total Assets at Liquidation Value*** | $ 157,200 |
| **Less:** | |
| Secured creditors' recoveries | $ |
| **Less:** | |
| Chapter 7 trustee fees and expenses | $ 50,000 |
| **Less:** | |
| Chapter 11 Administrative Claims | $ 50,000 |
| **Less:** | |
| Priority claims, excluding Administrative Claims | $ 7,500 |
| (1) Balance for unsecured claims | $ 49,700 |
| (2) Total dollar amount of unsecured claims | $ 350,000 |
| ***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:*** | 14% |
| ***Percentage of Claims Which General Unsecured Creditors Will Receive or Retain under the Plan:*** | 22% |